In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 18-2499

GREGORY S. WILSON,

*Plaintiff-Appellant,*

*v.*

WEXFORD HEALTH SOURCES, INC., *et al.,*

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16 C 8446 — **Sharon Johnson Coleman**, *Judge.*

———————————

ARGUED APRIL 15, 2019 — DECIDED JULY 26, 2019

———————————

Before WOOD, *Chief Judge*, and BAUER and ST. EVE, *Circuit Judges*.

WOOD, *Chief Judge*. Gregory Wilson was an inmate at Illinois's Stateville Correctional Center. This case concerns the medical care he received there for an inguinal hernia. The hernia was first spotted in the 1990s, but then it apparently subsided. In 2011, it reappeared in the identical spot. Wilson, by

that time at Stateville, says that the 2011 recurrence was extremely painful. He complains that the prison's medical officers refused to listen to him and delayed giving him hernia-repair surgery, instead forcing him repeatedly and fruitlessly to push the herniated tissue back into his abdominal cavity.

Eventually, however, in September 2014 Wilson did receive surgery, which was successful. Precisely what Wilson told medical personnel and what kind of treatment he should have received during the three years before the surgery is the subject of this case. Wilson asserts that Wexford Health Sources, LLC ("Wexford"), the private company that provides medical services at Stateville, along with Dr. Imhotep Carter, Dr. Saleh Obaisi, and Physician's Assistant (PA) LaTanya Williams, violated his Eighth Amendment rights through deliberate indifference to his serious medical needs. He seeks damages under 42 U.S.C. § 1983.

After the court dismissed Dr. Carter on statute of limitations grounds, the case proceeded to discovery. Before trial, the district court granted several motions *in limine* filed by the defendants. This resulted in the exclusion of several reports and a ban on Wilson's mentioning a *respondeat superior* theory of liability for Wexford. After the close of Wilson's case, the defendants moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). The court granted the motion and dismissed the case. Although we agree with most of these rulings, we conclude that the court dismissed Dr. Obaisi too quickly, and so a remand is necessary with respect to him.

## I

Given the posture of the case, our account of the facts presents them in the light most favorable to Wilson; these are not

either the jury's or our independent findings. Wilson testified that he first noticed the reappearance of his hernia in 2011. Though painful, the hernia was small and "reducible," meaning that Wilson could manually push the protruding tissue back into his abdominal cavity. At trial, Wilson said that he first submitted a complaint about the hernia in January 2012, and around that time he saw Dr. Carter, who was then the medical director of Stateville. Dr. Carter refused to listen to Wilson or help him with his hernia. In May 2012, Dr. Carter left Stateville.

Because Wilson did not file this suit until August 30, 2016, the question naturally arises whether it is time-barred with respect to Dr. Carter. We review this question *de novo. Middleton v. City of Chicago*, 578 F.3d 655, 657 (7th Cir. 2009). All parties agree that this action under section 1983 is subject to Illinois's two-year statute of limitations and tolling rules. *Devbrow v. Kalu*, 705 F.3d 765, 767 (7th Cir. 2013). Accrual, however, is governed by federal law. *Id.* In *Heard v. Sheahan*, 253 F.3d 316 (7th Cir. 2001), we recognized that a section 1983 Eighth Amendment claim based on deliberate indifference in the delivery of medical care does not necessarily allege a single event or a series of events, but may describe an ongoing denial of care. *Id*. at 319. In such cases, we have a continuing violation for accrual purposes. The alleged wrong—the refusal to provide medical care—"continued for as long as the defendants had the power to do something about [the plaintiff's] condition." *Id*. at 318. But even under that theory, if a defendant leaves the institution altogether, his involvement in the alleged wrong is over. The date of the defendant's departure thus marks the last possible time when the claim might have accrued. In Dr. Carter's case, that date is in May

2012, when he resigned. See also *Heard v. Elyea*, 525 F. App'x 510 (7th Cir. 2013) (nonprecedential).

Initially Wilson filed a complaint in May 2013. After several amendments and years of discovery, the court dismissed that complaint without prejudice, because Wilson was still pursuing administrative remedies within Stateville. See *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). By the time Wilson refiled the complaint, it was August 2016. That is the date that matters here. Wilson cannot rely for limitations purposes on the filing date of the dismissed complaint. *Dupuy v. McEwen*, 495 F.3d 807, 810 (7th Cir. 2007) ("[W]hen a suit is dismissed without prejudice, the statute of limitations continues to run from the date (normally the date of the injury) on which the claim accrued."). Because the accrual date is no later than Dr. Carter's last day of work at Stateville, Wilson's claim against him is untimely unless another legal rule saves it.

Wilson believes that he has found such a rule in Illinois's savings statute. 735 ILCS 5/13-217. That statute gives plaintiffs a year to refile a state suit following a dismissal by a federal district court, as relevant here, "for lack of jurisdiction" or "improper venue." *Id.* The statute also applies to cases that were "voluntarily dismissed by the plaintiff or dismissed for want of prosecution by the court." *Id.* But, even assuming that a state statute is capable of providing extra time for filing a suit in federal court, none of those reasons applies to Wilson's case—the court dismissed for lack of exhaustion, and so the savings statute cannot help him.

We note as well that Wilson cannot rely on another Illinois tolling rule, which applies when the commencement of an action is stayed by statutory prohibition. See 735 ILCS 5/13–216. This provision applies to prisoner litigants such as Wilson

who are subject to the exhaustion of remedies requirement imposed by the Prison Litigation Reform Act. *Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001). Wilson's limitations clock for Dr. Carter did not begin to run until his administrative grievance was denied. *Id.* That happened, at the latest, in January 2014—a date that is also more than two years before the date when Wilson re-filed suit. The district court thus properly dismissed Wilson's claim against Dr. Carter on timeliness grounds.

## II

We turn now to Dr. Obaisi and PA Williams. The district court granted their motions for judgment as a matter of law after Wilson completed his presentation at trial. See FED. R. CIV. P. 50(a). We review that decision *de novo*, construing the trial evidence in favor of Wilson. *Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1017 (7th Cir. 2000). Proving that prison medical treatment (or lack thereof) was so inadequate that it violated a plaintiff's Eighth Amendment right to be free from cruel and unusual punishment is no small feat. Negligence in diagnosis or treatment does not suffice—only deliberate indifference to a serious medical need will do. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).

### A. Williams

On February 21, 2012, Wilson saw PA Williams for a general check-up. PA Williams testified that although she did not specifically remember her conversation with Wilson, her normal advice for someone with a reducible hernia would have been to try therapy and to see the medical director if that proved ineffective. Her notes on Wilson are consistent with

this general practice. Wilson's attorney tried to tie PA Wil-
liams's treatment to Wexford's general policies on hernia
treatment, and Wilson himself testified that he remembers
Williams mentioning Wexford policy. PA Williams, however,
denied that she blindly followed the Wexford policy and as-
serted that her treatment was based on her own independent
medical assessment and judgment. Throughout March and
April 2012, Wilson contacted PA Williams several times and
saw her once for other medical issues. In none of those visits
did he mention the hernia.

Though she did not refer Wilson for the surgery he
wanted, PA Williams did evaluate him and use her medical
judgment to provide a reasonable treatment option. In the
Eighth Amendment context, medical professionals receive a
great deal of deference in their treatment decisions. A consti-
tutional violation exists only if "no minimally competent pro-
fessional would have so responded under those circum-
stances." *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th
Cir. 1998). It was Wilson's burden to submit evidence that, if
believed, would show such a serious deficit in PA Williams's
course of action. *Whiting v. Wexford Health Sources, Inc.*, 839
F.3d 658, 662 (7th Cir. 2016). He failed to do so. He had no
expert of his own, and the two doctors whose testimony was
admitted at trial, co-defendant Dr. Obaisi and Wilson's sur-
geon Dr. Gangemi, both testified that a "wait and see" ap-
proach was appropriate for a minimally symptomatic hernia.
On such a sparse record, the district court had no choice but
to grant judgment as a matter of law for PA Williams.

### B. Dr. Obaisi

As spring of 2012 turned to summer, Wilson continued to
report pain and request surgical treatment for his hernia. On

May 7, August 14, and December 3, he sent letters to the Stateville Health Care Unit requesting to be seen for his hernia because he was in serious pain. While the first two letters were addressed more generally to the Unit, the December letter was addressed specifically to Stateville Medical Director Dr. Obaisi. One month later, on January 10, 2013, Wilson saw Dr. Obaisi. According to Wilson, he brought up the hernia but Dr. Obaisi refused to discuss it or listen to Wilson's plea for surgery, saying he was not there to discuss the hernia and implying Wilson was not "special." Dr. Obaisi recalled that encounter differently, although unfortunately he died before trial and so his trial "participation" was limited to his recorded deposition. In his deposition, Dr. Obaisi pointed out that there was no mention of the alleged hernia conversation in his notes, and he insisted that his practice was diligently to record everything in the chart. Nonetheless, Dr. Obaisi admitted that he had no specific memory of Wilson's appointment.

Wilson's medical records and testimony over the next year paint a confusing picture. Wilson says that he unsuccessfully requested treatment several times before he ultimately filed a grievance. But he supported that statement only with copies of handwritten complaints without any proof beyond his word that they were ever sent or received. Wilson's medical chart documents one appointment to address the hernia in September 2013, but the notes from the nurse who saw him that day do not mention the hernia. The nurse and Wilson provided conflicting testimony about whether the hernia was discussed at all. In February 2014, Dr. Obaisi recorded in Wilson's medical chart that Wilson filed a grievance about the treatment of his hernia. On March 3, 2014, Dr. Obaisi saw Wilson and referred him for surgery. After a few scheduling and

transportation delays, Dr. Antonio Gangemi of Chicago Medical Center surgically repaired Wilson's hernia on September 10, 2014.

Wilson contends that he should have been referred for surgery long before March 3, 2014. It is undisputed that Dr. Obaisi saw Wilson over a year earlier, that Wilson had a hernia at the time, and that Dr. Obaisi did not treat the hernia at that appointment. What happened between Wilson and Dr. Obaisi at that January 10, 2013, appointment and what Dr. Obaisi knew and did afterwards are disputed.

Deliberate indifference requires knowledge and disregard. If there is no direct evidence of knowing disregard, there must be at least enough evidence for a jury to draw an inference to that effect. Whether circumstantial or direct, the evidence must show that the physician was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Construing the facts in Wilson's favor, a reasonable jury could believe Wilson's testimony over Dr. Obaisi's insistence on the completeness of his notes. If the jury credited Wilson, then Dr. Obaisi not only learned of the painful hernia in January 2013, but he also explicitly refused to hear potentially relevant medical details (including the ineffectiveness of attempts to "reduce" it) and was dismissive about Wilson's pain. If the jury further credited Wilson's records and testimony about his later complaints, Dr. Obaisi not only knew about the hernia in January 2013, but he inexplicably never followed up on it despite his knowledge of ongoing and unaddressed pain.

While a medical expert is not always essential for an Eighth Amendment deliberate indifference claim based on medical treatment (or lack thereof), most such claims require us to take a peek at the physician's judgment, to ensure that he was actually exercising medical judgment and was not otherwise deliberately indifferent. *Whiting*, 839 F.3d at 662. By claiming that he was exercising his medical judgment, a treating physician is "asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment." *Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016). The plaintiff cannot reach the jury without evidence to overcome that deference to medical judgment. Such evidence can include standard treatment protocols, which can support an inference that the doctor "'knew better' than to pursue the course of treatment that he did." *Whiting*, 839 F.3d at 663.

In this case, Dr. Obaisi's own testimony suggests that his refusal to assess Wilson's hernia and his failure to monitor it would have contradicted his own medical judgment about appropriate basic treatment for hernias. If a trier of fact were to believe Wilson's account of events and Dr. Obaisi's testimony about what treatment is necessary, then it would be entitled to conclude that Dr. Obaisi "knew better" than to disregard Wilson's complaints. That finding, in turn, would be support for a conclusion of deliberate indifference.

Deliberate indifference alone, however, cannot carry the day for Wilson. He must also show that his hernia presented a serious medical need. This record includes conflicting facts about the severity of his hernia and the pain Wilson was feeling. In other cases, however, we have recognized that "a hernia can be an objectively serious medical problem" and that

for some hernias, the "chronic pain presents a separate objectively serious condition." *Gonzalez v. Feinerman*, 663 F.3d 311, 314 (7th Cir. 2011). Wexford's own Medical Policy and Procedures on the Repair of Abdominal Wall/Inguinal Hernias (introduced into evidence by Wilson) identify three types of hernias: reducible, incarcerated, and strangulated. Incarcerated hernias "require urgent surgical surveillance," while strangulated hernias "represent a surgical emergency." Wilson presented evidence that he was experiencing significant pain, and thus his "reducible" hernia might have been getting worse; he also presented evidence that Wexford recommended him for surgery in March 2014 and Dr. Gangemi promptly agreed when he saw Wilson.

While Dr. Obaisi stresses that Wilson did not mention his hernia or his pain every time he interacted with medical staff, that does not end the discussion. Taking the facts favorably to Wilson, his failure constantly to mention the pain is inconclusive. Wilson testified that he was in terrible pain and that he filed grievances to this effect. Whether that testimony is ultimately believable is a credibility determination for the jury. See *Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996) ("[T]his is a case about pain … the textbook example of a uniquely subjective experience."). Construing the evidence in favor of Wilson, we conclude that a jury could find that Dr. Obaisi was deliberately indifferent to Wilson's serious medical needs during the 14-month period between the January 2013 visit and the March 2014 reference for surgery. It was therefore error to grant judgment as a matter of law in Dr. Obaisi's favor.

## C. Wexford

Last, we consider the judgment in favor of Wexford. In *Iskander v. Village of Forrest Park*, we joined our sister circuits in

holding that "a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights." 690 F.2d 126, 128 (7th Cir. 1982). The plaintiff may try, however, to demonstrate that a private corporation has a company policy or rule that is the "moving force of the constitutional violation." *Id.* (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). The Wexford Medical Policy and Procedures on the "Repair of Abdominal Wall/Inguinal Hernias" include this statement:

> Based upon the current medical literature regarding the natural history of abdominal hernias, their repair and reoccurrence, it is Wexford Health's position that: Patients with stable abdominal wall hernias are not, in general, candidates for herniorrhaphy and will be monitored and treated with appropriate non-surgical therapy.

Wilson says this policy explains why PA Williams and Dr. Obaisi did not immediately refer him to surgery. The problem with his argument is that the Policy itself is not a flat prohibition against surgical intervention. It purports only to describe what happens "in general." Lest there were any doubt, the Policy goes on to say:

> Decisions regarding patient suitability for consideration of abdominal wall herniorrhaphy must be made on a case by case basis. These recommendations are intended only as a guide for the site physician and are not intended to replace hands-on clinical judgment.

This language, combined with the testimony from both Williams and Dr. Obaisi that they exercised their medical judgment on a case-by-case basis and that the Policy does not play

a large role in their treatment decisions, leaves no room for a reasonable jury to find that Wexford's policy blocked Wilson's chance for surgical correction.

Wilson also seeks to hold Wexford liable for its medical providers' conduct under a *respondeat superior* theory, but he realizes that this is an uphill battle. The district court granted defendants' motion *in limine* preventing Wilson from making this argument, because our holding in *Iskander* forecloses it. We recognize that in *Shields v. Illinois Dep't of Corrections*, Judge Hamilton called for a re-examination of *Iskander's* holding in an appropriate case, and he outlined why *Monell's* logic, developed for municipalities, may not apply to private corporations. 746 F.3d 782, 786 (7th Cir. 2014). But we declined to hear *Shields en banc*, and since then we have chosen to leave *Iskander* undisturbed. See *Gaston v. Ghosh*, 920 F.3d 493, 498 (7th Cir. 2019) (Hamilton, J., concurring). Wilson has not convinced us that this is the case in which we should change course. He is free, of course, to make this argument to the Supreme Court, but it does not carry the day here.

Wexford was thus entitled to judgment as a matter of law, as the district court recognized.

## III

Wilson finally blames his loss on the district court's trial-management rulings, including its decision to exclude certain evidence and the *respondeat superior* theory of liability. We already have explained why the latter decision was correct. As for the motions *in limine*, our review is only for abuse of discretion. *Mitchell v. City of Chicago*, 862 F.3d 583, 587 (7th Cir. 2017). "We will reverse only if no reasonable person would agree with the trial court's ruling and the error likely affected

the outcome of the trial." *Perry v. City of Chicago*, 733 F.3d 248, 252 (7th Cir. 2013). Wilson objects to two exclusions.

The first is the exclusion of two reports: the Lippert Report and the John Howard Association Report. Wilson wanted to introduce them as proof that Wexford generally provides substandard care. The Lippert Report was prepared by a team of experts for a federal district court in another case. It includes an audit of medical records and interviews from Stateville, as part of a general report on Illinois prisoner medical care statewide. The John Howard Association Report is an annual assessment by a prison-reform watchdog organization about the conditions at Stateville.

Wilson is not the first litigant who has tried to introduce these reports. Numerous others have, too, but the reports have been excluded each time as inadmissible hearsay. *Boyce v. Wexford Health Sources, Inc.*, No. 15 C 7580, 2017 WL 1436963, at *5 (N.D. Ill. Apr. 24, 2017); *Mathis v. Carter*, No. 13 C 8024, 2017 WL 56631, at *4-5 (N.D. Ill. Jan. 5, 2017); *Diaz v. Chandler*, No. 14 C 50047, 2016 WL 1073103, at *12 (N.D. Ill. Mar. 18, 2016); *Gray v. Hardy*, No. 11 C 7097, 2013 WL 5433280, at *5 n.6 (N.D. Ill. Sept. 30, 2013), *rev'd on other grounds*, 826 F.3d 1000 (7th Cir. 2016); *Allen v. Hardy*, No. 11 C 4147, 2012 WL 5363415, at *6 (N.D. Ill. Oct. 26, 2012). We agree with that assessment. The reports are not authenticated by their authors or the numerous persons quoted within them. FED. R. EVID. 801, 802. They are not public records. FED. R. EVID. 803(8). Nor is the residual hearsay exception appropriate. FED. R. EVID. 807. At best, these reports reveal problems with Stateville generally without linking those problems to Wilson's personal experience. We find no abuse of discretion in the district court's handling of the motions *in limine*.

**IV**

We AFFIRM the district court's dismissal of the claims against Dr. Carter, and the grants of judgment as a matter of law to defendants Williams and Wexford. We REVERSE the grant of judgment in Dr. Obaisi's favor and REMAND this case for further proceedings consistent with this opinion.