NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 23, 2019[*]
Decided October 23, 2019

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 19-1720

| | |
|---|---|
| ARTHUR BEATTY, SR., *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| *v.* | No. 1:17-cv-02149-TWP-TAB |
| MICHAEL PERSON, Doctor, *et al.*, *Defendants-Appellees*. | Tanya Walton Pratt, *Judge*. |

**O R D E R**

Arthur Beatty, Sr., an Indiana inmate with flat feet, sued prison medical staff and their corporate employers for their deliberate indifference to his ankle and foot pain in violation of the Eighth Amendment. *See* 42 U.S.C. § 1983. The district court granted the defendants' motion for summary judgment. Because no reasonable jury could find that the defendants deliberately ignored his condition, we affirm.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Beatty requested treatment for a painful, swollen ankle in June 2016. A nurse examined him, provided ibuprofen and a compression bandage, and referred him to a doctor. Before he met the doctor, Beatty complained of more pain and requested gel insoles and an x-ray or CT scan. Prison staff provided the insoles, and Dr. Michael Person, the prison's medical director, saw Beatty shortly thereafter and diagnosed him with flat feet. When Beatty's pain persisted, even with the pain relievers and footwear, he asked for more medical attention. Because he was a "chronic care" patient for his diabetes and hypertension, Beatty saw a doctor at 90-day intervals. At his next chronic-care visit, Dr. Person examined Beatty's feet again, diagnosed a sprain, and ordered a large lace-up ankle brace and physical therapy. The following week, a physical therapist met with Beatty and taught him flexibility and strengthening exercises.

Despite the medication, foot supports, and physical therapy, Beatty's pain endured, and the next month he asked for yet more treatment. Dr. Person examined Beatty again and referred him to an orthopedist, whom Beatty saw the following week. x-rays showed that Beatty's ankles were normal except for the flat feet, and the orthopedist recommended customized arch inserts. The next day, in adherence to the orthopedist's recommendation, Dr. Person ordered a consult to have Beatty fitted for custom orthotics. He then ordered the molded-arch footwear that the specialist recommended. Before this footwear arrived, Beatty continued to complain of pain and request more care, including an MRI and a bottom-bunk pass. A nurse who received some of these requests, Tina Collins, told Beatty to discuss them with Dr. Person at his upcoming chronic-care appointment. But Dr. Person deemed the MRI unnecessary because the orthopedist had already confirmed the cause of Beatty's pain. He also denied the bottom-bunk pass because Beatty did not suffer from a sprain or break, and Corizon's medical policy limited bottom-bunk passes to inmates with those conditions.

Beatty received the custom orthotic boots, but he now says that they exacerbated his pain. In his written request for further treatment after he received the boots, however, he did not state that the boots worsened his pain. Instead, he asked to see a doctor and to schedule an MRI, insisting that his bones were out of place. Collins, who received these requests, determined that Beatty's condition had not changed and told him that no MRI was scheduled. She advised him to discuss his issues at his next chronic-care appointment.

Dissatisfied, Beatty filed two grievances in 2017, which an administrator handled. The first stated that the prison had refused to give him needed emergency medical assistance. The administrator confirmed that Dr. Person had treated Beatty for

his condition and had deemed an MRI unnecessary. The second grievance stated that Beatty's year-long pain had worsened since wearing orthotic boots, that Collins had told him to wait until his chronic-care appointment to see a doctor, and that Dr. Person had promised him an MRI but never scheduled one. The administrator spoke with Dr. Person, who committed to addressing Beatty's concerns at the next visit.

Beatty sued Dr. Person; Nurse Collins; the administrator; their employer, Corizon Health Sources, Inc.; and its successor in March 2017, Wexford of Indiana, LLC. He alleged that they were deliberately indifferent to his foot pain by, among other acts, ordering the wrong orthotic and never ordering an MRI. The district court entered summary judgment for the defendants, concluding that no reasonable jury could find that the medical staff impermissibly ignored or delayed his medical treatment or that Corizon or Wexford had a policy that violated Beatty's constitutional rights. We review the entry of summary judgment de novo. *See Johnson v. Rimmer*, 936 F.3d 695, 705 (7th Cir. 2019).

Beatty contends on appeal that the district court improperly resolved genuine fact disputes in the defendants' favor, but he is incorrect. Beatty begins by arguing that the district court impermissibly rejected his contention that Dr. Person had ordered the wrong orthotic. But the medical records show that Dr. Person ordered the exact shoes with custom molded-arch support that the specialist had recommended. If he had ordered a different orthotic, he would have risked a charge of deliberate indifference. *See Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (en banc). Beatty next argues that the district court ignored his assertion that Dr. Person had promised him an MRI. But the relevant issue is not whether Dr. Person had promised an MRI but whether not ordering one, in the context of Beatty's overall care, was reckless. *See id.* at 728 ("we look to the totality of an inmate's medical care when considering whether that care evidences deliberate indifference to serious medical needs"). It was not. "An MRI is simply a diagnostic tool, and the decision to [forego] diagnostic tests is 'a classic example of a matter for medical judgment.'" *Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014) (internal citations omitted). Finally, Beatty argues that the court improperly found that his treatment cured his condition. But the court did not find that the defendants healed Beatty's pain, only that they were not indifferent to it.

Beatty's principal argument on appeal is that a reasonable jury could have found that the prison's medical staff ignored and delayed his foot treatment in violation of the Eighth Amendment. To survive summary judgment on this claim, Beatty needed to offer evidence from which a reasonable jury could conclude that the defendants knew

of and deliberately disregarded a serious health condition. *See Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994); *Petties*, 836 F.3d at 727–28 (7th Cir. 2016). A medical provider impermissibly disregards a health condition when it responds as "no minimally competent professional would have so responded under those circumstances." *Petties*, 836 F.3d at 729 (internal citation omitted).

The record undisputedly shows that the medical staff provided Beatty overall with constitutionally adequate treatment. *See Petties*, 836 F.3d at 728. The staff repeatedly examined Beatty's foot and ankle, referred him to a physical therapist and an orthopedic specialist, ordered custom orthotics, took an x-ray, and provided insoles, ankle braces, and pain medicine. Beatty responds that Nurse Collins should have changed this treatment after he received the orthotic boots because they worsened his pain. But in his requests for treatment after receiving the boots, Beatty did not tell Collins that they exacerbated his pain. Therefore, she did not deliberately disregard this condition. *See Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). Rather, in his requests Beatty asked for an MRI and a doctor. It is undisputed that in response Collins, seeing no change to his condition, answered his queries and advised him to discuss any concerns at an upcoming appointment with Dr. Person. Nothing in this record suggests that more was required of a minimally competent professional. *See Wilson v. Wexford*, 932 F.3d 513, 519 (7th Cir. 2019).

We can quickly dispatch Beatty's last two arguments. First, he contends that the grievance administrator violated the Eighth Amendment by not ordering enhanced medical care following his two grievances. But the administrator relied on Dr. Person's professional judgment in addressing both grievances, which she was entitled to do. *See Rasho v. Elyea*, 856 F.3d 469, 478–79 (7th Cir. 2017). Second, Beatty argues that Corizon and Wexford were deliberately indifferent to his pain. To avoid summary judgment in their favor, Beatty needed to point to a policy that caused a constitutional injury. *See Whiting*, 839 F.3d at 664. The only corporate policy in the record is the one limiting bottom-bunk passes to inmates with sprains or broken bones. Beatty has not furnished any evidence that policymakers at Corizon or Wexford had reason to believe that people with flat feet who are otherwise receiving constitutionally adequate care also require bottom bunks. Therefore, summary judgment in their favor was proper.

AFFIRMED