NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 17, 2020[*]
Decided August 18, 2020

**Before**

DIANE S. SYKES, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 19-1586

| | |
|---|---|
| JESSE R. PEREZ, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 14-cv-4286 |
| RENEE PARKER, et al., *Defendants-Appellees.* | Robert M. Dow, Jr., *Judge.* |

**O R D E R**

Jesse Perez alleges that jail personnel unlawfully beat him and then denied him proper medical care. *See* 42 U.S.C. § 1983. To resolve a factual dispute on the defense that Perez did not exhaust the jail's administrative remedies before filing this suit, the district court held a hearing, found that Perez had not exhausted, and dismissed the case. Because the court's factual finding that Perez did not exhaust his administrative remedies is not clearly erroneous, we affirm.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

The relevant events occurred on July 9, 2012, while Perez was held at the Will County Adult Detention Facility. According to Perez, as he fought with two other detainees, jail officials arrived, handcuffed him, and punched and kicked him. Perez was left with a cut above his eye, a swollen face and chest, and severe pain. A doctor examined him, confirmed the swelling and bruising in his face and rib area, and gave him ice and ibuprofen for the pain. The doctor also told Perez that his ribs could be fractured but did not order an MRI or x-ray. Three months later, Perez transferred to the Illinois Department of Corrections.

In this suit, Perez alleges that the jail officials provoked the fight and used unconstitutional force to quell it; then, he continues, medical staff failed to provide him with appropriate treatment for his injuries. The defendants moved for summary judgment, arguing that Perez had not exhausted the available administrative remedies about these matters before suing, as federal law requires. 42 U.S.C. § 1997e(a). The district court held a hearing to resolve whether Perez had done so. *See Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). With Perez represented by recruited counsel, the parties offered competing evidence.

The defendants submitted evidence about the jail's grievance process and lack of any grievance from Perez regarding the July 9 incident. The process requires detainees to submit grievance forms in triplicate. A reviewing officer signs the form, gives the detainee the pink copy, and if it contains a genuine grievance, forwards the white and yellow copies to a sergeant. The sergeant then reviews the form, enters the grievance in a log, and forwards the two copies to the applicable department for a response. Once the department reviews and answers the grievance, the white copy is routed to the detainee's file and the yellow copy to the detainee. At the *Pavey* hearing, a sergeant testified about the contents of Perez's file and the jail's grievance log. Perez's file contained 287 forms, including over 10 grievances in the three months following the incident (before his transfer). No form in his file concerned the July 9 incident or its aftermath; the same was true of the jail's grievance log.

Perez told a different story. He testified that he had submitted multiple grievances ("at most ten") about the July 9 incident, but that the defendants never responded to them, logged them, or gave him his pink copies. This testimony conflicted with his deposition testimony in two respects. First, at the deposition, he said that he had submitted "well over ten" (up to 30) grievances about the incident. Second, he

swore that he *did* receive pink copies of these grievances, but that they must have been lost or destroyed when he was transferred. At the hearing, he also produced one copy of an unrelated grievance that he had submitted but that was not in the jail's log in order to suggest that its absence from the log showed that some grievances go missing at the jail.

The district court ruled against Perez. It credited the defendants' evidence about the grievance process and the absence of relevant grievances in Perez's file or the jail's log. The court also disbelieved Perez's testimony for several reasons. First, none of the forms that Perez swore he submitted about the attack were in his file or on the grievance log, yet all other (unrelated) forms that submitted after the incident were. Second, between his deposition and hearing testimony, Perez contradicted himself. In discussing the number of grievances that he said he had submitted, his testimony varied from "well over ten" at his deposition to "at most ten" at the *Pavey* hearing. Likewise, at his deposition Perez swore that he received pink copies of the grievances (and they were later lost or destroyed); at the hearing he swore he never received pink copies. Based on its credibility determinations, the court found that Perez had not filed any grievances, so he had not exhausted administrative remedies. The court then dismissed the case without prejudice.

Perez appeals the dismissal, but before reaching the merits we must assure ourselves that we have jurisdiction over the appeal. Ordinarily a dismissal without prejudice is not final, and therefore not appealable, under 28 U.S.C. § 1291. *Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016). But the dismissal of Perez's suit is effectively final because the incident occurred in 2012, so his claims are now barred by Illinois's two-year statute of limitations that applies to § 1983 claims. *See Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 517–18 (7th Cir. 2019). This bar renders the dismissal final and thus our jurisdiction is secure. *See Hernandez*, 814 F.3d at 840–41.

Perez challenges generally the district court's finding that he did not exhaust, but his challenge is unpersuasive. (Perez also raises arguments on the merits of his claims, but the district court never reached the merits, so exhaustion is the only issue before us. *See* 42 U.S.C. 1997e(a).) A district court's factual findings are not clearly erroneous when it "chooses between two permissible inferences from the evidence." *United States v. Rice*, 673 F.3d 537, 540 (7th Cir. 2012). To rule that the district court clearly erred, the entire record must leave us "with the definite and firm conviction that a mistake has been

committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).)

No clear error occurred here. One permissible inference from the record, and the inference the district court reasonably made, is that Perez filed no grievances about the events of July 9. The prison's sergeant credibly testified that no grievances from Perez about the July 9 incident were in his file or in the jail's grievance log, although other grievances that Perez filed around the same time were logged and filed. The district court also reasonably rejected the alternate inference that Perez proposed: The defendants lost or destroyed his grievances about the July 9 incident. The only non-testimonial evidence that he offered to support his view was that, of his 287 filed grievances, the defendants did not log one of them. But the defendants' failure to log one of his grievances out of nearly 300 did not *require* the district court to believe Perez's testimony that he filed numerous grievances about the July 9 incident, all of which the defendants also failed to log.

Moreover, the district court had ample reason to reject Perez's assertions about his filed grievances as inconsistent and therefore not credible. Determinations of witness credibility "can virtually never be clear error." *Anderson*, 470 U.S. at 575. Perez argues that, although his testimony switched between his deposition and the *Pavey* hearing, it was not necessarily inconsistent. He observes that he never committed to the exact number of grievances that he filed—he always estimated—and he was just confused about what happened to his pink copies. True, Perez never committed to a precise tally of filed grievances, but his estimates were contradictory: The lower limit of his estimate at his deposition was above the upper limit of his *Pavey* estimate. As for the pink copies, the record belies Perez's assertion that he was confused. He attested unequivocally at his deposition that he received them and later lost them; at the *Pavey* hearing he swore that he *never* received them. Finally, Perez cannot explain away the inconsistency that his other grievances, filed during this period, are in his file, but not one of his submissions about this incident are. Given these inconsistencies, the district court's decision to discredit Perez's testimony was not "completely without foundation." *United States v. Cherry*, 920 F.3d 1126, 1138 (7th Cir. 2019) (quoting *United States v. Freeman*, 691 F.3d 893, 900 (7th Cir. 2012).)

We have reviewed Perez's remaining arguments, but none has merit.

AFFIRMED