**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 17, 2020[*]
Decided September 18, 2020

*Before*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 19-3044

| | |
|---|---|
| JERRY L. HUDSON, SR., | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 3:18-CV-01356-NJR-GCS |
| | |
| SAMUEL NWAOBASI, et al., | Nancy J. Rosenstengel, |
| *Defendants-Appellees*. | *Chief Judge*. |

**O R D E R**

Jerry Hudson, an Illinois inmate, appeals the dismissal of his deliberate-indifference suit against a prison doctor under the applicable two-year statute of limitations. The district court explained that his suit was untimely because he brought it four years after the events in question and no theory of tolling applied. We affirm.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

As he sets forth in his complaint, Hudson—then incarcerated at Menard Correctional Center—sought treatment in late 2012 for a painful mass on his back, along with other conditions, including weight loss and difficulty walking. According to Hudson, Dr. Robert Shearing, the prison's medical director at the time, diagnosed the mass as noncancerous scar tissue and treated his other ailments with steroids and nutritional drinks. Even though the pain from the mass on his back worsened, Dr. Shearing allegedly denied Hudson's requests for x-rays and treatment at an outside hospital, telling Hudson that nothing could be done for him. In August 2013, an extraction of the mass was performed at Dr. Shearing's direction by another prison doctor, Samuel Nwaobasi, who, Hudson says, was not qualified to perform surgeries and who excised the mass in an unsterilized examination room, without giving him any anesthesia. Three months later, Dr. Shearing ended his employment at the prison.

Hudson's health deteriorated over the following months. In July 2014 he suffered congestive heart failure, went into a three-day coma, and was admitted to an outside hospital. The hospital's staff diagnosed myriad conditions, including bone cancer; diseases of the heart, kidney, and lungs; and diabetes. According to Hudson, they told him that he should have been receiving treatment for the conditions much earlier.

Four years later, in July 2018, Hudson sued Dr. Shearing, Dr. Nwaobasi, and Wexford Health Services, Inc. (the prison's medical care provider) for deliberate indifference in their treatment of his various conditions. *See* 42 U.S.C. § 1983. Hudson alleged that the mass-removal surgery—and the absence of treatment in the following months for his other conditions—caused unnecessary harm and continue to cause serious complications. He also alleged that the prison's current health staff (none of whom is a party in this case) continue to deny him the treatment he needs. The court added the prison's warden, Frank Lawrence, as a defendant in his personal capacity to carry out any injunctive relief that Hudson might obtain.

In a series of separate orders, the district court dismissed the claims against each defendant. At screening, *see* 28 U.S.C. § 1915A, the court dismissed the claims against Wexford for failure to state a claim, explaining that Hudson did not identify any Wexford policy that permitted the alleged constitutional violations. The court then dismissed the claims against Dr. Nwaobasi for failure to prosecute. (Dr. Nwaobasi, who had not been served with process, died in October 2018, and Hudson declined the court's invitation to take further steps such as substituting another party.) Next, the court granted Dr. Shearing's motion to dismiss the claim against him as barred by Illinois's two-year statute of limitations. Hudson's claim accrued, the court determined,

in 2013—when Dr. Shearing left Menard—and lapsed three years before he filed this suit. Though a continuing constitutional violation might have delayed the claim's accrual date, the court added, that date could be deferred only for as long as Dr. Shearing was employed by the prison and could do something about the violation. Finally, because no claims for injunctive relief remained, the court dismissed Warden Lawrence.

On appeal, Hudson challenges only the district court's ruling that the statute of limitations had run on his claims against Dr. Shearing. He argues that the statute of limitations did not start to run until July 2018, when he "found out" that "the doctors … had been negligent." Before that time, Hudson maintains, he did not know the extent of the harm caused by the doctor's treatment decisions. We review this ruling de novo. *Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 517 (7th Cir. 2019).

The district court correctly concluded that the statute of limitations has run on Hudson's claim. Because the acts of which Hudson complains occurred in 2013, his deliberate-indifference claim is barred by Illinois's two-year statute of limitations that applies to § 1983 claims. *Id.* at 517–18. True, "[t]he statute of limitations starts to run when the plaintiff discovers his injury and its cause even if the full extent or severity of the injury is not yet known," *Devbrow v. Kalu*, 705 F.3d 765, 768 (7th Cir. 2013), but Hudson's own allegations belie his claim that he did not learn of his injury until 2018. According to his complaint, he knew as early as 2013 that Dr. Shearing mistreated his conditions and authorized an operation that was unduly painful and unhygienic. Even if we credit Hudson's argument that, as of 2013, he had not yet discerned that the doctor's treatment decisions caused him avoidable harm (after all, Dr. Shearing told him nothing could be done), he alleges being told by the medical team during his hospitalization the following year that he should have received treatment much earlier. That hospitalization occurred four years before he filed this suit.

Hudson also maintains that the constitutional violations are continuing because he still deals with repercussions of the doctor's treatment decisions. But even though Hudson's difficulties continue, the district court properly concluded that his claim against Dr. Shearing accrued when he left the prison. A denial of care lasts only as long as the defendant can do something about it. *Wilson*, 932 F.3d at 517–18. "[I]f a defendant leaves the institution altogether, his involvement in the alleged wrong is over. The date of the defendant's departure thus marks the last possible time when the claim might have accrued." *Id.* at 518. Because Dr. Shearing stopped working at the prison in

November 2013—a year before Hudson discovered his injury—the continuing violation theory does not postpone the accrual of his claim.

Lastly, Hudson reprises his earlier requests that we recruit counsel on his behalf. But we stand by our denials: No counsel could overcome the hurdle he faced by waiting too long to file suit. *See Pruitt v. Mote*, 503 F.3d 647, 659 (7th Cir. 2007) (en banc).

We have considered Hudson's other arguments, and none has merit.

AFFIRMED