NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 20, 2012[*]
Decided December 20, 2012

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

KENNETH F. RIPPLE, *Circuit Judge*

No. 12-2211

| | |
|---|---|
| JAMES GASTON, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 11 C 6612 |
| PARTHASARATHI GHOSH, et al., *Defendants-Appellees.* | James B. Zagel, *Judge.* |

**O R D E R**

James Gaston, an Illinois prisoner, appeals the dismissal of his lawsuit under 42 U.S.C. § 1983 claiming that two contract physicians violated the Eighth Amendment by failing to provide appropriate and timely medical care for a painful knee injury. The district court dismissed the suit before service for failure to state a claim. *See* 28 U.S.C.

---

[*] The appellees were not served with process in the district court and are not participating in this appeal. After examining the appellant's brief and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the appellant's brief and the record. *See* FED. R. APP. P. 34(a)(2)(C).

§ 1915A(b)(1). We conclude that Gaston states an Eighth Amendment claim against both doctors, and thus reinstate his complaint.

For purposes here we accept as true the allegations in Gaston's complaint. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012). In May 2009, while incarcerated at Stateville Correctional Center, Gaston injured his left knee during a basketball game. A few days later he complained to a physician's assistant about severe pain and swelling in that knee. An X-ray revealed scattered gunshot pellets and signs of degenerative arthritis. Gaston was given a cloth knee brace as well as Motrin and ice to relieve his pain.

During the following months Gaston continued to experience severe pain, and his knee began to "lock up" and "give out." He barely could bend it, which made walking difficult. In late September 2009 he complained to a medical technician, who scheduled an appointment at the prison infirmary. That visit was delayed twice because of inadequate staffing in the infirmary, and a third time because of a lockdown at Stateville. Dr. Liping Zhang, a physician employed by Wexford Health Sources, finally saw Gaston in November 2009. He complained about "severe excruciating pain" and stiffness in his knee, but Dr. Zhang refused to send him to a specialist. Although six months had already passed since the injury, the doctor gave Gaston only Ibuprofen and told him that his knee would "get better." Yet the knee did not improve, and neither did Dr. Zhang schedule follow-up care or inquire again about Gaston's condition. Gaston asked the doctor to take another look at his knee when he saw her for his asthma in April 2010, but Dr. Zhang refused to discuss the knee and, despite Gaston's complaint that the nearly year-old injury still was causing excruciating pain, told him that his appointment was for asthma and nothing more. Once again she did not schedule follow-up care.

Gaston's pain worsened over the next month, and in May 2010 he again turned to a physician's assistant for help. The assistant promptly scheduled Gaston to see Stateville's medical director, Dr. Parthasarathi Ghosh, also a Wexford employee. He evaluated Gaston and promised to schedule a consultation with an orthopedic surgeon at the University of Illinois at Chicago. But Dr. Ghosh did not follow through until after Gaston had submitted an emergency grievance complaining about the delay in getting his knee "fixed" and also written Dr. Louis Shicker, the medical director for the Illinois Department of Corrections, asking to see a specialist. Gaston was finally taken to see the orthopedic specialist in September 2010, four months after Dr. Ghosh had recognized the need for the consultation.

The orthopedic surgeon suspected that Gaston had injured the menisci, cartilage in the knee, but wanted an MRI for verification before proceeding with treatment. Dr. Ghosh promptly gave his approval but then waited over four months, until February 2011, before scheduling this diagnostic procedure. All the while Gaston was submitting grievances and

writing Dr. Shicker about his need for surgery and the delay in scheduling the MRI. He also wrote Dr. Ghosh in December 2010 about the delayed MRI. Gaston explained in this letter that the pain and stiffness in his left knee had worsened and that now his right knee also hurt because he was favoring it to relieve stress on his left knee. Gaston reminded Dr. Ghosh that the MRI was needed before the orthopedic surgeon could fix his knee. The MRI finally was conducted in March 2011. A month later, in April 2011, Gaston submitted another grievance asserting a need for surgery, but the grievance officer deemed the matter "resolved" because Dr. Ghosh had discussed the MRI with Gaston in March and purportedly referred him back to the orthopedic surgeon.

Five months later, in September 2011, Gaston sued Dr. Zhang and Dr. Ghosh. (He also named several other defendants but on appeal does not challenge their dismissal.) In concluding that Gaston's allegations do not state an Eighth Amendment claim for deliberate indifference to his knee injury, the district court declared that the X-ray and MRI had revealed nothing significant and said the actions of Dr. Zhang and Dr. Ghosh had been consistent with the opinion of the "independent UIC Hospital orthopedic specialist." The court did not explain this reference to the specialist, who, as far as the complaint shows, had never seen the MRI results and thus could not have given an opinion on the need for surgery or other treatment.

After the dismissal Gaston moved for reconsideration, *see* FED. R. CIV. P. 59(e), and also sought permission to amend his complaint to update his factual allegations and add Dr. Imhotep Carter as an additional defendant. Gaston explained that the orthopedic surgeon had recommended surgery after seeing the MRI results, and yet Dr. Ghosh would not authorize the procedure. Then in August 2011, after Dr. Ghosh had retired, Stateville's new medical director approved the surgery, which was performed that same month. Afterward, though, Gaston's new treating physician, Dr. Carter, ignored the surgeon's postoperative instructions for a regimen of pain medication and physical therapy. Dr. Carter also ignored the surgeon's recommendation for a follow-up appointment to assess Gaston's progress and obtain an MRI of his right knee to evaluate the need for further surgery. Dr. Carter told Gaston that the MRI would not be scheduled for another year. The district court denied Gaston's motion with the explanation that the "large amount of medical care" he had received doomed his claim of deliberate indifference. The court did not specifically address the delay in treatment and called Gaston's proposed amended complaint "futile."

On appeal Gaston challenges the dismissal of Dr. Zhang and Dr. Ghosh. These physicians at best provided "cursory" treatment, says Gaston, and ultimately let him suffer severe pain for more than two years instead of promptly referring him to a specialist and abiding the specialist's treatment advice. Gaston also argues that the district court should

have allowed him to amend his complaint to expand his factual allegations and add Dr. Carter as a defendant.

The Eighth Amendment imposes a duty to provide adequate medical care to prisoners. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Gomez*, 680 F.3d at 865. To claim a breach of that duty, an inmate need only allege that a defendant was deliberately indifferent to an objectively serious medical condition. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009); *Walker v. Benjamin*, 293 F.3d 1030, 1039 (7th Cir. 2002). Prison doctors may exhibit deliberate indifference to a known condition through inaction, *Gayton v. McCoy*, 593 F.3d 610, 623–24 (7th Cir. 2010); *Rodriguez*, 577 F.3d at 830, or by persisting with inappropriate treatment, *Gonzalez v. Feinerman*, 663 F.3d 311, 314 (7th Cir. 2011); *Greeno v. Daley*, 414 F.3d 645, 653–54 (7th Cir. 2005). Physicians might also show their deliberate indifference by delaying necessary treatment and thus aggravating the injury or needlessly prolonging an inmate's pain. *Gomez*, 680 F.3d at 865; *Smith v. Knox Cnty. Jail,* 666 F.3d 1037, 1039–40 (7th Cir. 2012); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010).

The district court erred in dismissing Gaston's lawsuit as against Dr. Zhang and Dr. Ghosh. Gaston's knee injury was a serious medical condition not only because it caused him severe and excruciating pain, *see Gonzalez*, 663 F.3d at 314; *Gutierrez v. Peters*, 111 F.3d 1364, 1370–71 (7th Cir. 1997), but also because it was recognized by both Dr. Ghosh and the orthopedic surgeon to require further evaluation and treatment, *see Ortiz v. Webster*, 655 F.3d 731, 734 (7th Cir 2011); *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). And Gaston's allegations against these two physicians, rather than bearing out the district court's characterization of the defendants as providing a "large amount of medical care," actually paint a picture of complete inaction at worst and unexplained delay at best.

Gaston informed Dr. Zhang during his first appointment with her that his knee had been in constant and severe pain for six months. Yet Dr. Zhang did nothing to relieve Gaston's pain except offer Ibuprofen (even though Motrin and ice had not helped Gaston up to that point), and refused to investigate his condition further, simply telling him the knee would get better. Moreover, when Gaston saw Dr. Zhang again four months later and told her that the Ibuprofen had not relieved his pain and that his knee was only getting worse, she refused even to discuss his injury and never scheduled any follow-up care. Prison doctors cannot simply ignore serious medical conditions or an inmate's severe pain, and if Gaston is believed, Zhang did just that. *See Gonzalez*, 663 F.3d at 314–15 (no treatment provided for hernia); *Gayton*, 593 F.3d at 623–24 (nurse refused to see or treat inmate even after concerned guards brought her a bag of the inmate's vomit); *Burks v. Raemisch*, 555 F.3d 592, 593–94 (7th Cir. 2009) (no treatment for eye condition resulting in permanent impairment of inmate's vision). Gaston's complaint therefore states a claim against Dr. Zhang.

Dr. Ghosh also did little himself for Gaston's knee, and he cannot escape liability simply because he recognized the need for a specialist and eventually, after significant delay, referred Gaston to an orthopedic surgeon. *See Jones v. Simek*, 193 F.3d 485, 487–490 (7th Cir. 1999) (prisoner experiencing pain and numbness in his arm from nerve damage stated claim for deliberate indifference against doctor who promised a referral to a neurologist but delayed referral for six months and refused to prescribe pain medication in interim). Dr. Ghosh delayed Gaston's appointment with the orthopedic surgeon for nearly four months, and once the surgeon had identified the need for an MRI, Dr. Ghosh approved the procedure but allowed another four months to pass before Gaston actually received an MRI. Then after the surgeon was finally given the MRI results and confirmed the need for surgery, Dr. Ghosh again delayed Gaston's treatment by refusing to give authorization. Only after Ghosh had retired did Gaston receive the indicated treatment, and by then more than two years had passed since his injury.

Although delay will not always establish a doctor's deliberate indifference to the medical needs of a prisoner, *see Gutierrez*, 111 F.3d at 1374 (concluding that six-day wait to see doctor was not unreasonably long for infected cyst deemed not that severe), Dr. Ghosh's delays in assuring appropriate treatment for Gaston's injured knee are as troubling, if not more so, than those in cases where we have concluded that doctors arguably acted with deliberate indifference by delaying treatment and prolonging inmates' pain. *See, e.g., Smith*, 666 F.3d at 1040 (five days of bleeding, vomiting, dizziness, and severe pain); *Rodriguez*, 577 F.3d at 832 (four days of severe pain from IV insertion); *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) (two days of pain from dislocated finger). Thus the district court erred when it decided that Gaston does not state a claim against Dr. Ghosh.

On remand Gaston is free to amend his complaint, *see* FED. R. CIV. P. 15(a); *Smith*, 666 F.3d at 1040, to expand his allegations against Dr. Zhang and Dr. Ghosh, and also to add a new claim that in August 2011 and afterward Dr. Carter ignored the surgeon's postoperative instructions and recommendations. Gaston's proposed amended complaint, instead of being futile, in fact strengthens his claim of deliberate indifference against the two existing defendants and also states a claim against Dr. Carter, *see Gil v. Reed*, 381 F.3d 649, 663–64 (7th Cir. 2004) (concluding that defendant physician who disregarded surgeon's postoperative instructions could be found to have been deliberately indifferent); *Jones*, 193 F.3d at 490 (same for instructions from neurologist), especially as Gaston's brief indicates that he has now been scheduled for surgery on his right knee as well.

Accordingly, the judgment of the district court is VACATED as to defendants Zhang and Ghosh, and the case is REMANDED for further proceedings against them. Given this result, Gaston has not incurred any strikes for this litigation. *See* 28 U.S.C. § 1915(g); *Turley v.*

*Gaetz*, 625 F.3d 1005, 1012 (7th Cir. 2010). With respect to all other defendants the judgment is AFFIRMED. Gaston's request for the assistance of counsel on appeal is DENIED.