In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 17-3618 & 18-1281

JAMES GASTON,

*Plaintiff-Appellant,*

*v.*

PARTHASARATHI GHOSH, *et al.,*

*Defendants-Appellees.*

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11-cv-6612 — **Edmond E. Chang**, *Judge.*

ARGUED MARCH 27, 2019 — DECIDED APRIL 3, 2019

Before EASTERBROOK, KANNE, and HAMILTON, *Circuit Judges.*

EASTERBROOK, *Circuit Judge. Iskander v. Forest Park*, 690 F.2d 126 (7th Cir. 1982), holds that private corporations, when deemed to be state actors in suits under 42 U.S.C. §1983, must be treated the same as municipal corporations. This means that they are not subject to vicarious liability. See, e.g., *Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009); *Monell v. New York City Department of Social Services*, 436 U.S. 658,

691–94 (1978). *Iqbal*, *Monell*, and other decisions hold that municipalities and public employees may be held liable for their own decisions and policies but are not liable under the doctrine of *respondeat superior* for the acts, decisions, and policies of other persons, including subordinate public officials. *Iskander* held that the same approach applies to private corporations and their agents, to the extent that they are treated as state actors for the purpose of §1983. James Gaston asks us to overrule *Iskander* and hold that in litigation under §1983 a private corporation may be liable vicariously to the same extent as a private corporation in the law of torts.

That argument has been made before but left unresolved, because the appeals could be decided on other grounds. See, e.g., *Collins v. Al-Shami*, 851 F.3d 727, 734 (7th Cir. 2017); *Glisson v. Indiana Department of Corrections*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc); *Shields v. Illinois Department of Corrections*, 746 F.3d 782 (7th Cir. 2014). That is equally true today, and for the same reason as in *Collins*: the employee "is not liable, so—even if the theory of *respondeat superior* were available—neither is his employer."

Gaston, a prisoner of Illinois, suffered injuries that led to surgery on both of his knees. (He had other medical problems, but treatment for them is no longer in dispute.) He first complained about pain in his left knee in May 2009. Drugs did not solve the pain, and the knee did not heal on its own. Liping Zhang, a physician employed by Wexford Health Sources, which Illinois uses to provide medical care in the state's prisons, eventually alerted Parthasarathi Ghosh, who referred Gaston to an orthopedic surgeon. Delay in implementing that decision followed; the consultation occurred in September 2010. Dr. Ghosh, the head of medical services at

the prison, approved a magnetic resonance imaging (MRI) exam, which the specialist had recommended, but it was not conducted until February 2011. It revealed a lingering injury. In August 2011 Samuel Chmell performed arthroscopic surgery on Gaston's left knee, a step approved by Imhotep Carter, who replaced Dr. Ghosh after his retirement. (Dr. Chmell is an orthopedic surgeon on the staff of the University of Illinois hospital system, which handled all of the specialist work, MRI exams, and surgeries we mention.)

While Gaston's left knee was healing, a consultative body within Wexford delayed approving an MRI image of his right knee, stating that one knee had to be sound before treatment of the other could proceed. In May 2012 the prison's interim medical director (Dr. Carter having left) referred Gaston for an MRI exam on the right knee. It showed serious problems, and Dr. Chmell recommended another arthroscopic surgery. In August 2012 Saleh Obaisi, the prison's new medical director, approved Dr. Chmell's recommendation, and surgery occurred in October 2012. This did not bring the hoped-for relief, and Dr. Chmell recommended arthroplasty  (i.e., knee replacement). That surgery, a much more substantial medical intervention, was delayed while specialists determined whether Gaston's pulmonary and cardiology systems would handle the strain. More delay may have been caused by inattention to the case. The arthroplasty took place in February 2015 and was successful.

Gaston acknowledges that he has received a great deal of medical care. He does not contend that the diagnosis or the selected interventions can lead to §1983 liability under the approach of *Estelle v. Gamble*, 429 U.S. 97 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994); and *Petties v. Carter*, 836 F.3d

722 (7th Cir. 2016) (en banc). Instead he contends that the delays while waiting for surgeries reflect deliberate indifference to his pain, so that the pain became a form of unauthorized punishment in violation of the Eighth Amendment (applied to the states through the Due Process Clause of the Fourteenth Amendment). After the district court dismissed Gaston's complaint, we remanded, holding that a complaint based on unwarranted pain during extended delay in treatment states a claim under the Eighth Amendment. 498 F. App'x 629 (7th Cir. 2012) (nonprecedential disposition).

Back in the district court Gaston, although represented by counsel, proceeded pretty much as if anyone whose complaint states a legal claim prevails without needing to prove the complaint's allegations. Defendants conducted discovery; Gaston not so much. In particular, Gaston did not try to find out either *who* was responsible for the delays (the four physicians named as defendants? back-office staff? someone else?) or *why* those delays occurred (a desire that Gaston's pain continue? indifference to his pain? simple negligence? medical judgment?). For their part, defendants offered some evidence that would tend to support a conclusion that the delays could be chalked up to medical judgment—a preference for conservative treatment before surgery—plus occasional oversight, but never to any desire to injure Gaston or indifference to his pain. Dr. Chmell testified in a deposition that the treatment afforded to Gaston was within the standard of care in the medical profession—in other words, not even negligence, let alone punishment inflicted with the subjective standard required for constitutional liability.

Gaston contended that Wexford should be held liable even if none of the four physicians is culpable. In making

this contention, he assumed that, if *Iskander* should be overruled, then Wexford and other private corporations would become liable under §1983 for their employees' negligence, no matter what standard applies to the personal liability of those employees.

The district court granted summary judgment to the four individual defendants, ruling that the record does not show that any of them acted (or delayed acting) with the state of mind required for culpability. 2017 U.S. Dist. LEXIS 195234 (N.D. Ill. Nov. 28, 2017). The court recognized that it lacks the authority to depart from *Iskander*. Wexford could be liable for its own unconstitutional policies, but the court concluded that the policies to which Gaston pointed, such as treating one condition at a time, reflected medical judgment rather than a constitutional problem.

It is not as if Wexford has a policy of ignoring life-threatening conditions while a prisoner heals from surgery. Nor did Wexford ignore the pain from one knee while Gaston recovered from surgery on the other. He received pain-alleviating drugs. The district court's decision is addressed to a policy providing time between surgeries, a policy that Dr. Chmell testified is medically appropriate. The district judge was confident that, if a prisoner being treated for the flu broke his leg, Wexford would immediately provide the care needed to deal with a broken leg. 2017 U.S. Dist. LEXIS 195234 at *43. (The district court added that Gaston has not established that "treat one condition at a time" is Wexford's policy, as opposed to a medical decision made about his situation, in particular.)

In this court, Gaston scarcely engages with the district court's reasoning or the consequences of his failure to intro-

duce evidence. Instead he asks us to overrule *Iskander* in the belief that this will eliminate the need to show that any of Wexford's employees violated the Eighth Amendment. That not only contradicts *Collins*, which Gaston does not mention, but also misunderstands the nature of vicarious liability. It is—well, there's no better word than vicarious.

With vicarious liability, one person is liable for another's wrong. In an employment relation, that means an employee or other agent. The wrongdoer need not be a defendant, but there must be an actionable wrong, by a person whose conduct is imputed to the employer. Medical negligence by one of Wexford's employees could support liability under state tort law but not the Eighth Amendment. If only intentional wrongdoing by an employee leads to personal liability, then an employee's negligence does not justify holding the employer liable. There's nothing to be vicariously liable *for*.

These are fundamental principles of tort and agency law, where vicarious liability has long been common. "Vicarious liability is not based upon the defendant's own fault. Rather, it is based upon the principle that he must bear legal responsibility for another's wrong. From the employer-defendant's point of view, vicarious liability is strict liability, since he is liable without personal fault. That is not quite the case from the plaintiff's point of view. The plaintiff must prove that the employee committed a tort and was acting within the scope of employment when he did so." 2 Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, *The Law of Torts* 782 (2d ed. 2011 & update 2018). See also, e.g., *Rosenthal & Co. v. CFTC*, 802 F.2d 963, 966 (7th Cir. 1986); *National Union Fire Insurance Co. v. Wuerth*, 122 Ohio St. 3d 594, 599 (2009) ("a principal is vicariously liable only when an agent could be held directly

liable"); *Elias v. Unisys Corp.*, 410 Mass. 479, 481 (1991) ("The liability of the principal arises simply by the operation of law and is only derivative of the wrongful act of the agent"); *Restatement (Second) of Agency* §217B (1958). This also implies that vicarious responsibility does not change the substantive standard. "Vicarious liability is not an independent cause of action, but rather is a legal concept used to transfer liability from an agent to a principal". *Crawford v. Signet Bank*, 179 F.3d 926, 929 (D.C. Cir. 1999).

Vicarious liability makes a person responsible for someone else's wrong but does not change the proof required to show that a legal wrong has occurred. So even if we were to overrule *Iskander*, Gaston would need to show that *someone* whose acts are imputed to Wexford violated the Eighth Amendment, as understood in *Gamble*, *Farmer*, and *Petties*. He did not seriously try to do so. This makes it unnecessary to decide whether *Iskander* was correctly decided.

One final observation. Gaston and other plaintiffs have contended that *Iskander* leads Wexford and similar organizations to skimp on medical care in order to enrich themselves. Wexford responds that, because it does not pay for the cost of MRI exams, surgeries, and other hospital treatment outside the prisons, it has no financial reason to withhold appropriate medical treatment. That may be true, but so far Wexford has not supplied *evidence* that it is true. Perhaps Wexford has contracts with hospitals providing that they will not bill it, but it has not produced them. Perhaps Illinois pays for out-of-prison treatment under the Medicaid program, but again the record lacks proof. Dr. Chmell testified that Wexford did not pay *him*, but the record does not reveal whether Wexford paid the University of Illinois. Gaston has

lost this case for want of evidence, but the need to back up one's contentions with evidence applies as much to Wexford as it does to any prisoner.

AFFIRMED

HAMILTON, *Circuit Judge*, concurring. I join the court's judgment and opinion. For reasons explained in *Shields v. Illinois Dep't of Corrections*, 746 F.3d 782 (7th Cir. 2014), whether we should continue to apply the *Monell* standard to private corporations when they act under color of state law presents a substantial question. These appeals, however, are not the occasion to decide that larger question. Dr. Chmell's testimony about the defendants' care of plaintiff Gaston helps show that plaintiff cannot prove that one or more agents of Wexford acted with deliberate indifference toward his serious medical needs. Also, plaintiff has given up trying to prove that Wexford had a policy of deliberate indifference that would satisfy the *Monell* standard. Cf. *Glisson v. Indiana Dep't of Corrections*, 849 F.3d 372, 379–82 (7th Cir. 2017) (en banc) (reversing summary judgment for private healthcare provider where evidence would support finding that provider deliberately chose not to provide for coordination of medical care in complex cases, and that absence of such coordination caused prisoner's death).

I write separately to highlight a set of subtler but important issues that parties, lawyers, and judges need to confront in exploring the path suggested in *Shields*. Proving a violation of the Eighth Amendment's prohibition on cruel and unusual punishment requires proof of an intentional or criminally reckless tort. *Farmer v. Brennan*, 511 U.S. 825, 839–40 (1994); *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc). The question is how to prove that a corporation acted with the required state of mind.

The legally simplest case would prove that a specific, identified employee acted with the required deliberate indifference. The employer would then be vicariously liable for its

employee's tort committed within the scope of employment. The net result in such a case, however, would not differ much from the widespread practice of employers indemnifying their employees.

The next simplest case would be one in which one employee acted with deliberate indifference, but it is not possible to identify that employee. I expect that as long as the wrongdoer is identified reliably as an employee acting within the scope of employment, ordinary principles of respondeat superior liability would apply.

The more challenging cases, and the problems that contribute to the need to reexamine the application of *Monell* to private corporations, are cases where the plaintiff cannot show that a single employee acted with deliberate indifference, but where the evidence allows an inference that a group of employees acted with a collective indifference to a prisoner's health or safety. Experience with many prisoners' health care suits suggests this pattern may be common, especially within corporate structures that diffuse responsibility among different people. Consider, for example, the possibility of a scheduling team who do not try to schedule promptly surgeries that prisoners need to treat serious pain.

General tort law does not seem to provide a consensus on the problems of collective intent posed by claims for intentional torts against corporations. See *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 756 (1998) (discussing vicarious liability for intentional torts); Restatement (Second) Agency §§ 219 & 228 (1958) (addressing when master will be liable for intentional torts by servant); Prosser & Keeton on The Law of Torts § 70, at 505–06 (1984) (master will be liable for fraud or defamation by sales representative); see also Restatement (Third)

of Agency § 7.03, comment (e) (2006) (discussing different approaches to corporate intent for purposes of punitive damages).

The problem of corporate intent can also be thorny under federal statutes, such as those providing civil remedies for securities fraud. See *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 707–09 (7th Cir. 2008) (focusing on state of mind of corporate management for corporate liability in securities fraud cases and discussing *Southland Securities Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 366 (5th Cir. 2004)); Patricia S. Abril & Ann Morales Olazábal, *The Locus of Corporate Scienter*, 2006 Colum. Bus. L. Rev. 81, 114 (2006) ("The perceived weaknesses in the respondeat superior approach have led to the development of a corollary to the agency principle that allows for aggregation of the knowledge of several corporate employees in order to find the corporation liable: the collective knowledge doctrine."); Ashley S. Kircher, *Corporate Criminal Liability versus Corporate Securities Fraud Liability, Analyzing the Divergence in Standards of Culpability*, 46 Am. Crim. L. Rev. 157, 161 (2009) ("Courts in the United States are in notable disarray when analyzing the intent of corporations sued under the securities laws. Some courts have rejected the application of the doctrine of collective scienter, while others have embraced the doctrine with varying degrees of strength.").

I do not propose to answer those questions here, but I hope that parties pursuing the larger *Monell* issue will pay attention to them as they make their records and write their briefs.