| NONPRECEDENTIAL DISPOSITION |
| :---: |
| To be cited only in accordance with Fed. R. App. P. 32.1 |

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 23, 2019[*]
Decided November 1, 2019

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 18-1929

| | |
|---|---|
| RONALD BARROW, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 3:14-CV-00941-NJR-DGW |
| WEXFORD HEALTH SOURCES, INC., *et al.*, *Defendants-Appellees*. | **Nancy J. Rosenstengel**, *Judge*. |

## O R D E R

Ronald Barrow, an Illinois prisoner, sued the warden, several medical providers, and Wexford Health Sources, Inc., the prison's health services provider, for acting with deliberate indifference to his eye conditions in violation of the Eighth Amendment. *See* 42 U.S.C. § 1983. Some of Barrow's claims were dismissed, one settled, and the district court entered summary judgment on another. Then, after a three-day trial, a jury

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

returned a verdict in favor of the remaining defendants, and the district court later denied Barrow's motion for a new trial. We affirm.

Barrow's optometric issues began in early 2012 when a caustic substance splattered into his right eye and caused a retinal tear. He had immediate surgery, which temporarily improved his vision, but, over time, "floaters" mottled his worsening sight. The ophthalmologist who had performed the surgery recommended a membrane peel to remove the resulting scar tissue and a cataract extraction in the right eye. But the vision in Barrow's left eye was perfect, and Wexford's guidelines advise delaying a cataract extraction until there is 20/60 vision or worse in the dominant eye.

Barrow's eyesight further declined and started to fog. By the end of 2012, his right eye could make out nothing but the top line of the vision chart, and his left "good" eye had formed a small retinal tear. An ophthalmologist again endorsed cataract surgery and a membrane peel, and Wexford's medical advisory committee reviewed the recommendation. But Dr. Robert Shearing, the prison's medical director, proposed delaying the surgeries because they posed a risk of further retinal damage, and the other reviewers agreed. Shortly after, Barrow filed his first grievance about the failure to approve the surgeries.

The vision in Barrow's left, dominant eye continued to weaken, and Barrow filed a second grievance requesting the right-eye surgeries that the ophthalmologist had recommended over a year earlier. In November 2013, Dr. Trost took over as acting medical director. The next month, Barrow received another referral for surgery. By then, the vision in Barrow's "good" left eye, which was also forming a cataract, had deteriorated below the 20/60 threshold set forth in Wexford's guidelines. The advisory committee authorized the procedure subject to a retinal specialist's approval. Barrow then had the right cataract extraction in June 2014 and the membrane peel in October.

Barrow sued Wexford for establishing the "one good eye" policy and several of its employees, including Dr. Trost and Dr. Shearing, for deliberately delaying his eye surgery in violation of the Eighth Amendment and committing medical negligence under Illinois law. In the screening order, *see* 28 U.S.C. § 1915A, the district court stated that Barrow was required to provide an affidavit from a physician vouching for the merits of his claim. *See* 735 ILCS 5/2-622.[1] Barrow never did, and although the district court never dismissed the claim, Barrow ceased his pursuit of it.

---

[1] We do not address whether the district court appropriately required that the affidavit be provided at the pleadings stage. Although we have previously held that the affidavit requirement in 735 ILCS 5/2-622 reflects Illinois's "substantive" law of negligence,

After some of Barrow's claims were dismissed on motions, all of the remaining defendants moved for summary judgment. The district court entered summary judgment in favor of Dr. Trost because Barrow had not exhausted his administrative remedies against him. *See* 42 U.S.C. § 1997e(a). The court held a jury trial on Barrow's remaining claims against Wexford, Dr. Shearing, and another physician. Five days before trial, Barrow, who was represented by recruited attorneys, moved to continue the trial date, but the court denied the motion.

At trial, Barrow objected to a proposed jury instruction providing that deliberate indifference exists when a defendant knew of a substantial risk of serious harm, and "consciously disregarded the risk by failing to take reasonable measures to deal with it." Barrow proposed that the instruction include "failing *or delaying* to take reasonable measures." The court refused the edit as unnecessary. Later, the jury returned a verdict in favor of the defendants. Barrow then filed a pro se motion for a new trial under Federal Rule of Civil Procedure 59(a), citing a litany of pretrial and trial rulings that he believed prejudiced him. Concluding that Barrow had received a fair trial, the court denied the motion, and Barrow appeals.

Barrow first argues that the district court erred in granting Dr. Trost's summary judgment motion on the issue of exhaustion. We review de novo a grant of summary judgment based on a failure to exhaust. *See Obriecht v. Raemisch*, 517 F.3d 489, 492 (7th Cir. 2008). Here, Barrow did not exhaust his remedies with respect to Dr. Trost because he did not name the doctor in any grievance submitted before he commenced this lawsuit. *See* 18 U.S.C. § 1997e(a). The grievances filed before this lawsuit concerned events that preceded Dr. Trost's tenure as medical director, but he can be liable under § 1983 only for his own conduct. *See Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018). True, "prisoners need not file multiple successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing." *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). But the inmate in *Turley* challenged a systematic practice in the prison, whereas Barrow's lawsuit alleges specific instances when Dr. Trost contributed to the delays in his surgical treatment. He did not file grievances about that conduct before suing, so the district court properly granted Dr. Trost's motion for summary judgment.

---

*Hahn v. Walsh*, 762 F.3d 617, 633 (7th Cir. 2014), it is not clear that the timing requirement—that is, that the affidavit be made part of the pleadings—is similarly substantive. We need not answer that question here because Barrow does not challenge the affidavit requirement as contrary to federal pleadings standards.

Barrow also argues that the Illinois statute requiring plaintiffs to attach a physician's affidavit to a complaint alleging medical malpractice is unconstitutional because it deprives pro se prisoners of access to the courts in violation of the First and Fourteenth Amendments. We do not need to address the constitutional argument because Barrow was not denied the chance to pursue the claim. Although the district court pointed out the affidavit requirement, it never dismissed the claim—Barrow abandoned it. But Barrow could have pursued the claim to trial without amending the complaint because the evidence he marshalled to support his deliberate-indifference claim would also have been relevant to a malpractice claim. *See DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 628 (7th Cir. 2013); *Torry v. Northrop Grumman Corp.*, 399 F.3d 876, 879 (7th Cir. 2005). And it is the pretrial order, not the pleadings, that governs the scope of a trial. *See id*. But even with counsel for two years before trial, Barrow never obtained an affidavit or otherwise pursued the claim.

Barrow also contends that the district court erred in denying his motion for a new trial. First, he argues that his trial was unfair because the court denied his motion to continue the trial date. But the trial court "must have a wide berth to manage caseloads and dockets," *Ruark v. Union Pacific Railroad Co.*, 916 F.3d 619, 630 (7th Cir. 2019) (internal citation omitted), and we do not question the court's managerial decision here. Barrow's counsel sought the continuance just five days before trial, which had been set for five months, for non-emergency reasons. Counsel cited their busy schedules, uncertainty that all witnesses could appear, and Barrow's difficulty assisting with trial preparation because of a lockdown at the prison. The defendants replied that they were already traveling to court from around the country. Barrow does not point to specific prejudice caused by going to trial as scheduled, and under the circumstances, the district court did not abuse its discretion in requiring him to do so. *See id.*

Barrow also argues that the district court denied him a fair trial when it refused his proposed jury instruction. "We review de novo whether a challenged jury instruction fairly and accurately summarized the law, but the trial court's decision to give a particular instruction is reviewed for an abuse of discretion." *Sanchez v. City of Chicago*, 880 F.3d 349, 355 (7th Cir. 2018) (internal citation omitted). We would reverse only if the instruction misstated the law and Barrow suffered prejudice as result. *See id.* at 355–56. Neither occurred here. The district court gave this circuit's pattern jury instruction for deliberate indifference to a serious medical need, which accurately stated the law.[2] True, delayed treatment may constitute deliberate indifference. S*ee Gaston v.*

---

[2] The pattern instructions were amended in August 2017, two months before the trial, but the district court used the 2015 version. Although the amendments changed

*Ghosh*, 920 F.3d 493, 496 (7th Cir. 2019). But a failure to take reasonable measures includes unreasonably delaying needed treatment. The district court did not abuse its discretion in declining to modify the pattern instruction.

Barrow also contends that he should have been allowed to seek relief against Wexford on a theory of *respondeat superior*. He asks us to reconsider *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982), in which we held that a private corporation functioning as a state actor "is not vicariously liable under § 1983 for its employee's deprivations of others' civil rights." In other words, a private corporation's liability, like a municipal corporation's, is cabined by *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Although we have since questioned whether *Monell*'s logic applies to private corporations, *see Shields v. Illinois Dep't of Corrections*, 746 F.3d 782, 786 (7th Cir. 2014), we have left *Iskander* undisturbed as recently as this year, *see Gaston*, 920 F.3d at 497. We do not have cause to revisit it here. Barrow did not pursue a *respondeat superior* theory of relief; he challenged only Wexford's "good eye" policy—a textbook *Monell* claim. Further, even under a *respondeat superior* theory, Wexford could have been liable only if one of its employees was, *see id.* at 496–97, but a jury did not find a constitutional violation by any Wexford employee.

As for other errors at trial, Barrow directs us to his motion for a new trial and all related pleadings, but we will not root out arguments he has not raised in his brief. *See Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012). And although Barrow suggests that trial errors produced a verdict "against the weight of the evidence," he does not discuss that evidence or otherwise develop an argument, so we do not address that assertion further. *See Smith v. Northeastern Ill. Univ.*, 388 F.3d 559, 569 (7th Cir. 2004).

We have considered Barrow's other claims, and none has merit.

AFFIRMED

---

the relevant instruction, even the 2017 version does not contain "delay" as part of the standard or optional language. To the extent that Barrow challenges the use of the 2015 Pattern Instructions generally, that argument is waived because he did not object in the district court. *See United States v. Groce*, 891 F.3d 260, 269 (7th Cir. 2018).