In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-2592

SIDNEY L. PETERSON,

*Plaintiff-Appellant,*

*v.*

WEXFORD HEALTH SOURCES, INC., ARTHUR DAVIDA,
SARA MAYS, and LOREATHA COLEMAN,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 19-cv-415 — **Charles P. Kocoras**, *Judge.*

ARGUED NOVEMBER 3, 2020 — DECIDED JANUARY 26, 2021

Before KANNE, SCUDDER, and ST. EVE, *Circuit Judges.*

KANNE, *Circuit Judge.* Illinois inmate Sidney Peterson was injured after he personally applied a caustic medication to treat his genital warts. He now seeks to hold the prescribing doctor, the attending nurses, and Wexford Health Sources, Inc., accountable under state and federal law.

Peterson's federal claims end here because he failed to state a claim for deliberate indifference against any of the defendants. However, all parties agree that Peterson's state-law negligence claims were timely brought. We agree, and those claims may continue.

We affirm the district court's dismissal of Peterson's deliberate indifference claims, and we reverse its dismissal of Peterson's state-law negligence claims and remand for further proceedings.

## I. BACKGROUND

In January 2015, Sidney Peterson suffered from genital warts while incarcerated at the Stateville Correctional Center in Joliet, Illinois.[1] Dr. Arthur Davida—a physician at Stateville and employed by Wexford Health Sources, Inc.—prescribed Peterson a topical medication known as Podocon-25 to remove his warts.

Podocon-25 contains a caustic substance called podophyllin. It should be applied sparingly and then removed thoroughly with soap and water. Its packaging, in accordance with FDA regulations, states that "**PODOCON-25© IS TO BE APPLIED ONLY BY A PHYSICIAN. IT IS NOT TO BE DISPENSED TO THE PATIENT.**" It also warns of potential "ADVERSE REACTIONS: The use of topical podophyllin has been known to result in paresthesia, polyneuritis, paralytic

---

[1] We accept as true the facts stated in the operative complaint for purposes of this appeal and review them in the light most favorable to Peterson. *Perez v. Fenoglio*, 792 F.3d 768, 774 (7th Cir. 2015) (citing *Thulin v. Shopko Stores Operating Co., LLC*, 771 F.3d 994, 997 (7th Cir. 2014)).

ileus, pyrexia, leukopenia, thrombocytopenia, coma and death."

But Dr. Davida did not apply the Podocon-25 to Peterson's genital warts. Neither did Sarah Mays, a licensed practical nurse at Stateville, nor Loreatha Coleman, a registered nurse there. Instead, Mays and Coleman instructed Peterson to apply the treatment himself. He did so and suffered personal injuries as a result. (It is unclear whether Peterson used the medication in the presence of nursing staff or alone in his cell; his first complaint indicated the latter, but the operative complaint is silent.)

The procedural background of this case is more involved than its facts. In January 2016, Peterson filed a federal complaint *pro se* against Dr. Davida, Mays, Coleman, and multiple prison officials—several correctional officers, the prison warden and assistant warden, and the deputy director of the Illinois Department of Corrections—under 42 U.S.C. § 1983. In this first complaint, he alleged that the medical staff had caused him personal injuries, namely "severe soars [sic] on his penis" and resulting "permanent injuries and erectile disfunction," when he was required to apply the Podocon-25 himself in his cell and despite the fact that it "is not to be used by a person with diabetes." He also alleged that the other defendants had destroyed his shower pass permits that Dr. Davida had granted to him as part of his treatment or that they had otherwise failed to intervene to correct the situation.

In March 2016, the district court conducted a review pursuant to 28 U.S.C. § 1915A. In its March 16 order, the court granted Peterson's motion for leave to proceed *in forma pauperis*, denied his motion for attorney representation, and dismissed his claims against all defendants except three

correctional officers. Peterson was advised that he could seek to file an amended complaint.

After obtaining counsel, Peterson filed an amended complaint in July 2016, reasserting his claims under § 1983 and adding Wexford as a defendant. This amended complaint divided his claims into two parts: first, the Podocon-25 claims against Dr. Davida, Mays, Coleman, and Wexford; and second, the shower-pass claims against the prison officials. Peterson alleged more detail about Podocon-25's properties and packaging and less detail about how and where the medication was administered than in his initial *pro se* complaint. After discovery, the parties stipulated to dismissal, and the case was accordingly dismissed without prejudice on January 25, 2018.

On January 21, 2019—nearly one year later—Peterson filed the operative complaint, again with the assistance of counsel, claiming deliberate indifference under § 1983 and negligence under Illinois law against Dr. Davida, Mays, Coleman, and Wexford regarding his treatment with Podocon-25.

Mays and Coleman filed a partial motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Peterson failed to allege sufficient facts for deliberate indifference and that his negligence claims should be barred by sovereign immunity and the statute of limitations. In response, Peterson supplemented his allegations with further detail about Podocon-25 and its intended application.

On May 23, 2019, the district court granted the motion after finding that, although the complaint pled the existence of a serious medical condition, it failed to sufficiently allege that the defendants had the requisite state of mind for deliberate

indifference. The district court also held that Peterson's negligence claims were barred by the statute of limitations because his first complaint in January 2016 did not contain those allegations. Further, the relation-back doctrine did not apply because it governs only amendments to a complaint, not an entirely new filing. Peterson filed a motion to reconsider, which the district court denied.

Following Mays and Coleman's successful motion to dismiss, Dr. Davida and Wexford moved for judgment on the pleadings under Rule 12(c). The district court granted the motion and dismissed the case with prejudice in a docket entry, without discussion, on July 30, 2019. Judgment was entered the next day in favor of the defendants. Peterson timely appealed.

## II. ANALYSIS

We review *de novo* the district court's decision granting a motion to dismiss for failure to state a claim, "accepting as true all well-pleaded facts and drawing reasonable inferences in [Peterson's] favor." *United Cent. Bank v. Davenport Est. LLC*, 815 F.3d 315, 318 (7th Cir. 2016) (citing *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012)). For a pleading to survive, the plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

We review the district court's order granting a motion for judgment on the pleadings the same way—"de novo, asking whether the well-pleaded factual allegations viewed in favor

of the nonmoving party state a facially plausible claim for relief." *Sinn v. Lemmon*, 911 F.3d 412, 418 (7th Cir. 2018) (citing *Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017)).

### A.  Deliberate Indifference

"To determine if the Eighth Amendment has been violated in the prison medical context, we perform a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016) (en banc) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

Here, Defendants do not dispute that Peterson suffered from an objectively serious medical condition. We turn then to the second step and consider whether Peterson alleged facts plausibly stating a claim that Mays, Coleman, Dr. Davida, and Wexford were deliberately indifferent to his condition.

To satisfy this subjective step, the complaint must allege that the defendants acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). "[D]eliberate indifference entails something more than mere negligence" but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). "[T]he official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

"Prison officials must provide inmates with medical care that is adequate in light of the severity of the condition and professional norms." *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015). Demonstrating that the inmate received *some* treatment "does not automatically defeat a claim of deliberate indifference." *Id.* (quoting *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007)). "Deliberate indifference may occur where a prison official, having knowledge of a significant risk to inmate health or safety, administers 'blatantly inappropriate' medical treatment … ." *Id.* (quoting *Edwards*, 478 F.3d at 831). In other words, "[a] plaintiff can show that the professional disregarded the need only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, that 'no minimally competent professional would have so responded under those circumstances.'" *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (quoting *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)); *see also Holloway v. Del. Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012).

### 1. *Mays, Coleman, and Dr. Davida*

In the operative complaint, Peterson alleges that Podocon-25 contains "a powerful caustic and severe irritant" and that its packaging repeatedly and prominently warns that it is to be applied only by a physician and is not to be dispensed to the patient.

Peterson then makes allegations specific to the individual defendants. He alleges that Dr. Davida "prescribed for plaintiff a medication known as 'Podocon-25'" and that he

"ignored the FDA mandated warnings and directed that a non-physician apply the Podocon-25 to plaintiff's genital warts." The remaining allegations against Dr. Davida relate to his employment under Wexford.

Regarding Mays and Coleman, Peterson alleges that "[t]he job duties of defendant Mays included applying the Podocon-25 to plaintiff's genital warts" and that "Mays refused to apply the Podocon-25 to plaintiff's genital warts, instructing plaintiff to do it himself." He further alleges that "Mays knew that plaintiff would suffer personal injuries if plaintiff attempted to apply the Podocon-25 to his genital warts." Peterson makes the same allegations against Coleman.

In response to Mays and Coleman's motion to dismiss, Peterson supplemented the complaint's allegations.[2] He listed the possible "adverse reactions" described on the packaging and stated that Podocon-25 is to be "sparingly" applied and then "thoroughly removed" with alcohol or soap and water, which were not available to him.

To state a claim for deliberate indifference against these defendants, Peterson must allege that they were "aware … that a substantial risk of serious harm exist[ed]," *Farmer*, 511 U.S. at 837, and that their "subjective response was so inadequate that it demonstrated an absence of professional judgment," *Arnett*, 658 F.3d at 751. As the district court pointed out, Peterson makes conclusory allegations that these defendants had the requisite state of mind, stating that they "ignored

---

[2] In "opposing a Rule 12(b)(6) motion," Peterson was free to "elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

the FDA mandated warnings" and "knew that [Peterson] would suffer personal injuries." There are no related factual claims from which we could draw an inference that they "actually kn[e]w about yet disregard[ed] a substantial risk of harm to [Peterson's] health or safety." *Rasho v. Elyea*, 856 F.3d 469, 476 (7th Cir. 2017) (citing *Petties*, 836 F.3d at 728). We acknowledge that "Rule 9(b) allows states of mind to be alleged generally," *Armstrong v. Daily*, 786 F.3d 529, 547 (7th Cir. 2015); *see also Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009), but the deliberate indifference standard is not satisfied by these conclusory statements alone. Peterson's allegations regarding his treatment ultimately sink his complaint.

Let's consider the course of treatment as described by the complaint. Peterson did receive treatment for his genital warts. Of course, the "receipt of *some* medical care does not automatically defeat a claim of deliberate indifference if … the treatment was 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' a medical condition." *Edwards*, 478 F.3d at 831 (quoting *Snipes v. De-Tella*, 95 F.3d 586, 592 (7th Cir. 1996)) (emphasis in original). But Peterson does not allege that *prescribing* Podocon-25 was "blatantly inappropriate." *Id.* Indeed, the complaint asserts that one of the components of Podocon-25 is "prescribed for the removal of soft genital warts." Peterson's claim instead relies on how the medication was administered.

Significantly, the administration of Podocon-25 is where the complaint is most lacking. The complaint says only that Dr. Davida directed a "non-physician" to apply the medication. As Peterson's counsel clarified at oral argument, "non-physician" refers to a nurse rather than an inmate. So Peterson has alleged only that Dr. Davida, a licensed physician,

instructed a licensed nurse to apply a prescribed medication appropriate for treating the patient's condition. Although Peterson cites *Echols v. Craig* in support, Dr. Davida's alleged actions do not come close to the alleged conduct in *Echols*. *See Echols v. Craig*, 855 F.3d 807, 812 (7th Cir. 2017) (finding "no difficulty concluding that [the plaintiff] state[d] a plausible claim of deliberate indifference" where he alleged that the doctor "knew he broke a drill bit during the [tooth] extraction, … sutured his gum without accounting for the broken pieces, … obtained an X-ray that confirmed its presence but did nothing to address the problem").

As for the nurses, Peterson alleges only that it was within their "job duties" to apply the medication, yet they instructed Peterson to apply the Podocon-25 himself. It does not matter whether Dr. Davida instructed them or whether they independently chose to dispense the medication to Peterson. *Holloway*, 700 F.3d at 1075 ("A nurse may … act with deliberate indifference if he or she 'ignore[s] obvious risks to an inmate's health' in following a physician's orders." (quoting *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 683 (7th Cir. 2012))). Regardless, the allegations fail to state a claim that their actions were "so inadequate that [they] demonstrated an absence of professional judgment, that is, that 'no minimally competent professional would have so responded under those circumstances.'" *Arnett*, 658 F.3d at 751 (quoting *Roe*, 631 F.3d at 857).

At bottom, Peterson's complaint fails to allege that any of these three defendants were "aware … that a substantial risk of serious harm exist[ed]," *Farmer*, 511 U.S. at 837, and that their "subjective response was so inadequate that it demonstrated an absence of professional judgment." *Arnett*, 658 F.3d at 751. Peterson's allegations that Dr. Davida prescribed an

appropriate medication and instructed the nurses to administer it and that Mays and Coleman dispensed that medication to Peterson for him to apply himself do not evince "something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (quoting *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012)). We therefore conclude that Peterson failed to state a claim for deliberate indifference against Dr. Davida, Mays, and Coleman.

## 2. *Wexford*

Peterson has likely waived any arguments directed to the district court's judgment in favor of Wexford by simply failing to raise them on appeal. *Gable v. City of Chicago*, 296 F.3d 531, 538 (7th Cir. 2002) (finding that the plaintiffs "waived two of their arguments on appeal by not developing them in their opening brief"); *see also Henry v. Hulett*, 969 F.3d 769, 785–86 (7th Cir. 2020) (explaining that "waiver is the 'intentional relinquishment or abandonment of a known right'" (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). But even absent waiver, Peterson's complaint fails to state a claim against Wexford for deliberate indifference.

Peterson asserts that Wexford is liable under § 1983 "for the wrongdoing of its employee defendant Davida under the doctrine of respondeat superior." This theory fails. Under *Monell* and its progeny, a corporation can be liable under § 1983 only for its own policies and practices, not under a theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978); *accord Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016); *Shields v. Ill. Dep't of Corrs.*, 746 F.3d 782, 796 (7th Cir. 2014); *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982). Despite

calls to reconsider our precedent, "we have chosen to leave *Iskander* undisturbed," *Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 522 (7th Cir. 2019) (citing *Gaston v. Ghosh*, 920 F.3d 493, 498 (7th Cir. 2019) (Hamilton, J., concurring)), and Peterson presents no reason for us to take another look.

Furthermore, "'if the plaintiff's theory of *Monell* liability rests entirely on individual liability,' as [Peterson's] does here, then 'negating individual liability will automatically preclude a finding of *Monell* liability.'" *Donald*, 982 F.3d at 463 (quoting *Whiting*, 839 F.3d at 664). This claim against Wexford must therefore, at any rate, meet the same fate as the claim against Dr. Davida.

*B.  Timeliness of Negligence Claims*

The district court dismissed Peterson's negligence claims because it concluded that the statute of limitations had run. All parties now agree that this conclusion is incorrect and request that we reverse the dismissal of the state-law claims. We must oblige, for we agree that the district court was mistaken.

Peterson filed his first complaint on January 25, 2016; amended it in July 2016; and voluntarily dismissed it on January 25, 2018. The initial and amended complaint related to Peterson's alleged injury from 2015.

Peterson then filed the present complaint on January 21, 2019, and included negligence counts for the first time, the district court found. Because Peterson exhausted his administrative remedies on January 10, 2016, and the statute of limitations in Illinois is two years for personal-injury claims, 735 ILCS 5/13-202, the district court concluded that Peterson's negligence claims fell outside the limitations period. The court further concluded—correctly—that the relation-back

doctrine under Federal Rule of Civil Procedure 15(c) and 735 ILCS 5/2-616 could not save the claims because that doctrine only applies to amendments of existing complaints, not new causes of action.

However, the district court did not take into account 735 ILCS 5/13-217, under which plaintiffs have an "absolute right to refile their complaint within one year" of its voluntary dismissal. *Timberlake v. Illini Hosp.*, 676 N.E.2d 634, 636 (Ill. 1997); 735 ILCS 5/13-217 (West 1994).[3] Under this savings statute, a plaintiff refiling an action can bring new claims "that arose from the 'same transaction' alleged in the prior action." *Rocha v. Rudd*, 826 F.3d 905, 910 n.3 (7th Cir. 2016) (quoting *Richter v. Prairie Farms Dairy, Inc.*, 53 N.E.3d 1, 15 (Ill. 2016)).

Peterson, by refiling this complaint, was not limited to alleging only the causes of action in his original complaint; rather, he was at liberty to include any claims "arising from a single group of operating facts." *Richter*, 53 N.E.3d at 15 (citing *Hayashi v. Ill. Dep't of Fin. And Pro. Regul.*, 25 N.E.3d 570 (Ill. 2014)). His negligence claims relate to the events underlying the initial complaint's deliberate indifference claims. Thus, regardless of whether Peterson brought his negligence claims in his first two complaints, the savings statute protected those claims from the two-year statute of limitations.

---

[3] In 1995, the Illinois legislature amended this statute when it enacted Public Act 89-7, § 15, but the Supreme Court of Illinois struck down the entire act in *Best v. Taylor Mach. Works*, 689 N.E.2d 1057 (Ill. 1997). *Hudson v. City of Chicago*, 889 N.E.2d 210, 214 n.1 (Ill. 2008); *Rocha v. Rudd*, 826 F.3d 905, 909 n.1 (7th Cir. 2016). The operative language of this statute therefore comes from the pre-1995 version. *Rocha*, 826 F.3d at 909 n.1.

The district court erred in dismissing Peterson's negligence claims for being untimely.

### III. CONCLUSION

We AFFIRM the district court's dismissal of Peterson's deliberate indifference claims against all defendants. We REVERSE the dismissal of his negligence claims and REMAND for further proceedings consistent with this opinion.